# 24-305

## In the United States Court of Appeals for the Second Circuit

TREJOS HERMANOS SUCESORES S.A.,
*Plaintiff-Appellee,*

*v.*

VERIZON COMMUNICATIONS INC.,
*Defendant-Appellant*

*On Appeal from the United States District Court
for the Southern District of New York
(The Honorable Jennifer L. Rochon)*

### BRIEF OF APPELLEE

JONATHAN M. LANDY
AMY MASON SAHARIA
  *Counsel of Record*
BENJAMIN W. GRAHAM
NOAH C. MCCULLOUGH*
JONATHAN E. SPRATLEY
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW
  Washington, DC 20024
  (202) 434-5000
  asaharia@wc.com*

\*  Admitted in the District of Columbia under an emergency examination waiver and practicing law under the supervision of D.C. Bar members pursuant to D.C. Court of Appeals Rule 46-A.

## CORPORATE DISCLOSURE STATEMENT

Trejos Hermanos Sucesores S.A. has no parent company, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................1

STATEMENT OF THE ISSUES ..........................................................4

STATEMENT OF THE CASE ..............................................................4

    A.    Statutory Background ...........................................................4

    B.    Factual Background ..............................................................6

    C.    Procedural Background .........................................................8

          1.    *The Costa Rican proceedings* ...................................8

          2.    *The New York proceedings* ....................................11

STANDARD OF REVIEW ..................................................................16

SUMMARY OF ARGUMENT..............................................................16

ARGUMENT .......................................................................................19

I.    The District Court Properly Rejected Verizon's Arbitration-Related Objections to Recognizing the Judgment .................................19

    A.    The District Court Appropriately Gave Deference to the Costa Rican Courts' Subject-Matter Jurisdiction and Arbitrability Determinations.........................................20

          1.    *Deference was appropriate as a matter of comity* .............20

          2.    *An "independent" inquiry leads to the same result* ..........27

    B.    Verizon Failed to Show that the MPA's Arbitration Clause Precluded Recognition .........................................29

          1.    *Verizon failed to show that the Costa Rican courts lacked subject-matter jurisdiction* .....................30

          2.    *Verizon failed to show that the judgment was contrary to an arbitration clause*.........................34

          3.    *Verizon failed to show that the judgment cannot be recognized as contrary to public policy*.............................44

II.    The District Court Did Not Abuse Its Discretion in Recognizing the Judgment Over Verizon's Due Process and Integrity Objections.......................................................................................47

    A.    The Due Process and Integrity Grounds Are Narrow.................47

    B.    Verizon Failed to Satisfy the Due Process and Integrity Grounds .......................................................50

          1.    *Verizon cannot show it was denied due process*.................50

          2.    *Verizon cannot show corruption* .........................................55

ii

III.  The District Court Did Not Abuse Its Discretion in Partially
      Denying Verizon's Rule 56(d) Motion ......................................................58

CONCLUSION.............................................................................................63

# TABLE OF AUTHORITIES

Page

## CASES

*Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986) ....................................31, 44

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146 (2d Cir. 2016) .................58, 60, 61

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 585 U.S.
33 (2018) .............................................................................................26, 28

*Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*,
817 F.3d 433 (2d Cir. 2016) ........................................40, 42, 58, 62

*Auto. Mech. Local 701 v. Vanguard Car Rental*,
502 F.3d 740 (7th Cir. 2007) .................................................................31

*Automotores Galindo, S.A. v. Ford Motor Co.*,
2015 WL 4606561 (S.D. Fla. July 31, 2015) ..................36, 37, 38, 43

*Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624 (7th Cir. 2010) ............28

*Bounds v. Pine Belt Mental Health Care Res.*,
593 F.3d 209 (2d Cir. 2010) ...................................................................61

*Bugliotti v. Republic of Argentina*,
952 F.3d 410 (2d Cir. 2020) (per curiam) .............................................28

*Byblos Bank Eur., S.A. v. Sekerbank Turk Anonym Syrketi*,
10 N.Y.3d 243 (N.Y. 2008) ........................................6, 16, 34, 37

*Byblos Bank Eur., S.A. v. Syrketi*, 12 Misc. 3d 792 (Sup. Ct. 2006) ...............24

*Canales Martinez v. Dow Chem. Co.*,
219 F. Supp. 2d 719 (E.D. La. 2002) .....................................................51

*Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428 (6th Cir. 2012) ........................61

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012) ...........................*passim*

*CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*,
100 N.Y.2d 215 (N.Y. 2003) ..............................................19, 24, 48, 51

*City of Benkelman v. Baseline Eng'g Corp.*,
867 F.3d 875 (8th Cir. 2017) .................................................................31

*Clarkson Co. v. Shaheen*, 544 F.2d 624 (2d Cir. 1976) ....................................56

*Clientron Corp. v. Devon IT, Inc.*, 35 F. Supp. 3d 665 (E.D. Pa. 2014) ..........43

*Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir. 1985) ........38

*Degraw Const. Grp., Inc. v. McGowan Builders, Inc.*,
58 N.Y.S.3d 152 (N.Y. App. Div. 2017) ................................................45

*Deslauriers & Co., Att'ys S.A. v. Joel*,
117 N.Y.S.3d 812 (N.Y. Civ. Ct. 2019) .................................................59

*Diorinou v. Mezitis*, 237 F.3d 133 (2d Cir. 2001) ...........................................21

iv

Page

Cases—cont'd:

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ...............................54

*Elliott v. Cartagena*, 84 F.4th 481 (2d Cir. 2023) ..............................16

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*,
   40 F.4th 56 (2d Cir. 2022)..........................................................21

*Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156 (E.D.N.Y. 2003) ...............53

*Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75 (N.Y. 2010) ...........................4, 36

*Galloway v. Martorello*, 2023 WL 5229231 (E.D. Va. Aug. 14, 2023).............27

*Gilbert v. Donahoe*, 751 F.3d 303 (5th Cir. 2014) ................................31

*Glob. Network Commc'ns, Inc. v. City of New York*,
   562 F.3d 145 (2d Cir. 2009) .......................................................16

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)................................20

*Hilton v. Guyot*, 159 U.S. 113 (1895) .....................................20, 26, 28

*Hunt v. BP Expl. Co. (Libya)*, 492 F. Supp. 885 (N.D. Tex. 1980),
   *abrogated on other grounds*, 966 F.2d 1007 (5th Cir. 1992)........................46

*ICC Chemical Corp. v. TCL Industries (Malaysia) SDN*,
   206 F. App'x 68 (2d Cir. 2006) ..............................................*passim*

*In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011) ..........31

*In re Chromalloy Aeroservices*, 939 F. Supp. 907 (D.D.C. 1996)...............39, 46

*In re Martinez-Catala*, 129 F.3d 213 (1st Cir. 1997) ...........................56

*Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680 (7th Cir. 1987) ...............47

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)..................................................................33

*Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95 (2d Cir. 2022) ....................29

*Loucks v. Standard Oil Co. of N.Y.*, 224 N.Y. 99 (1918)................................45

*Lyeth v. Chrysler Corp.*, 929 F.2d 891 (2d Cir. 1991) ...............................62

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms,
   Inc.*, 874 F.3d 604 (9th Cir. 2017) ............................................48, 49

*Montebueno Marketing, Inc. v. Del Monte Foods Corp.*,
   2012 WL 986607 (N.D. Cal. 2012) .................................................38

*Morelli v. Alters*, 2020 WL 1285513 (S.D.N.Y. Mar. 18, 2020)........................31

*Navani v. Shahani*, 496 F.3d 1121 (10th Cir. 2007)................................21

*Nicor Int'l Corp. v. El Paso Corp.*,
   292 F. Supp. 2d 1357 (S.D. Fla. 2003)..................................37, 38, 46

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) .........59, 60, 61

Page

Cases—cont'd:

*Presley v. N.V. Masureel Veredeling*, 370 S.W.3d 425 (Tex. App. 2012) ........43

*Rein v. McCarthy*, 803 F. App'x 477 (2d Cir. 2020) ...........................................30

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994) ...........................................................................20

*S.C. Chimexim S.A. v. Velco Enters. Ltd.*,
    36 F. Supp. 2d 206 (S.D.N.Y. 1999)...........................................23, 31, 32, 35

*S.E.C. v. Juno Mother Earth Asset Mgmt., LLC*,
    2012 WL 685302 (S.D.N.Y. Mar. 2, 2012).................................................29

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*,
    489 F.3d 474 (2d Cir. 2007) ...............................................................45, 46

*Servipronto De El Salvador, S.A. v. McDonald's Corp.*,
    837 F. App'x 817 (2d Cir. 2020) ..................................................*passim*

*Shipcraft v. Arms Corp. of the Phil., Inc.*,
    2013 WL 649415 (N.Y. Sup. Ct. Feb. 19, 2013) .......................................59

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l,
    Inc.*, 198 F.3d 88 (2d Cir. 1999) ................................................................54

*Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000) ..................48, 49, 53

*Somportex Ltd. v. Phila. Chewing Gum Corp.*,
    453 F.2d 435 (3d Cir. 1971) .....................................................................46

*Spatola v. United States*, 925 F.2d 615 (2d Cir. 1991).....................................21

*SS&C Techs., Inc. v. Consultores Pueblo Bonito, S.A. de C.V.*,
    847 F. App'x 527 (10th Cir. 2021)...........................................................28

*Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*,
    973 N.Y.S.2d 197 (N.Y. App. Div. 2013) ..............................................48, 51

*Sung Hwan Co. v. Rite Aid Corp.*,
    847 N.Y.S.2d 78 (N.Y. App. Div. 2007) ..................................................33, 45

*Tahan v. Hodgson*, 662 F.2d 862 (D.C. Cir. 1981) ...........................................46

*TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007) .......39

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic
    Republic*, 864 F.3d 172 (2d Cir. 2017).................................6, 16, 34, 47

*Tolbert v. Queens Coll.*, 242 F.3d 58 (2d Cir. 2001).........................................30

*Tropp v. Corp. of Lloyd's*, 2008 WL 5758763 (S.D.N.Y. Mar. 26, 2008),
    *aff'd*, 385 F. App'x 36 (2d Cir. 2010)......................................48, 49, 53

*Tyco Valves & Controls Distribution GmbH v. Tippins, Inc.*,
    2006 WL 2924814 (W.D. Pa. Oct. 10, 2006) ...........................................37

Page

Cases—cont'd:

*United States v. Santiago*, 2023 WL 3081697 (2d Cir. Apr. 26, 2023)
(summary order) ..................................................................40
*United States v. Trabelsi*, 845 F.3d 1181 (D.C. Cir. 2017) ...........................21, 37
*Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302 (2014) ......................................49
*Wimmer Canada, Inc. v. Abele Tractor & Equip. Co.*, 750 N.Y.S.2d 331
(N.Y. App. Div. 2002) ........................................................31

## STATUTES AND RULES

New York Recognition Act, CPLR §§ 5300-5308 ...................................*passim*
Uniform Foreign-Country Money Judgments Recognition Act
(2005) ............................................................................*passim*
CPLR
§ 3213.............................................................................12, 59
§ 5303.............................................................................12, 59
§ 5304.............................................................................*passim*
Fed. R. Civ. P.
44.1...............................................................................27, 28
56.................................................................................*passim*

## OTHER AUTHORITIES

Br. of Appellee, *Montebueno Mktg., Inc. v. Del Monte Foods Corp.-
USA*, No. 12-15958 (9th Cir. Aug. 29, 2012), 2012 WL 3911631 .................36
Mark. C. Dillon, *Practice Commentaries to Section 3213 (The "Motion-
Action," Generally)* (2021)......................................................59
N.Y. Bill Jacket, 2021 S.B. 523, Ch. 127 .........................................5, 48
Richard C. Reilly, *Practice Commentaries to Section 5304 (Grounds
for Refusing Recognition, Generally)* (2021)................................36
Restatement (Fourth) of Foreign Relations Law (2018)
§ 483.......................................................................24, 31, 32, 33
§ 484.............................................................................*passim*
Uniform Foreign-Country Money Judgments Recognition Act
(2005) ............................................................................*passim*
U.S. Dep't of State, Country Report on Human Rights Practices,
Costa Rica, 2001 (released Mar. 4, 2002) ..................................51

## INTRODUCTION

Appellee Trejos Hermanos Sucesores S.A. is a century-old, family-owned Costa Rican printing shop. It contracted with an affiliate of appellant Verizon Communications, Inc. to print phonebooks in Costa Rica. When Verizon's corporate affiliate willfully breached that contract, Trejos Hermanos incurred millions of dollars in damages and was forced out of business.

After litigating for over eight years in Costa Rica, Trejos Hermanos secured a final money judgment against Verizon for the damages caused by its affiliate's willful breach. Verizon appealed that judgment to Costa Rica's highest court, arguing that, under Costa Rican law, the lower court lacked subject-matter jurisdiction and the underlying dispute was subject to an arbitration agreement. After nearly three years of appellate litigation, the Supreme Court of Justice rejected Verizon's arguments and affirmed the judgment.

Once Verizon exhausted its appellate rights in Costa Rica, Trejos Hermanos filed this New York recognition action to enforce the judgment and finally recover its damages. In response, Verizon sought yet another bite at the apple: It asked the district court to reject the Costa Rican courts' decisions on matters of Costa Rican law and instead to credit the opinions of Verizon's hired guns.

1

The district court correctly declined this invitation. New York's judgment-recognition statute codifies longstanding principles of comity. Consistent with those principles, foreign courts' findings are entitled to deference when the parties had a full and fair opportunity to litigate abroad—especially when the foreign court is construing its own law. Thus, as the district court explained, Verizon could not relitigate from scratch the very same jurisdictional and arbitrability arguments that the Costa Rican courts repeatedly rejected. But even if the district court had conducted its own "independent" assessment of Verizon's Costa Rican law arguments, it would have been obligated to reject them in light of the authoritative holdings of Costa Rica's highest court, which has the final say on these questions.

Verizon also argues that the arbitration agreement precluded recognition for a litany of additional reasons, many of which it never presented below. But Verizon provides no legal authority to support its contention that the Costa Rican courts misapplied their own law in rejecting Verizon's arbitration arguments.

Verizon next asserts that the Costa Rican proceedings violated due process and lacked integrity. But, as the district court observed, Verizon's own expert conceded that Verizon received procedural due process in Costa Rica;

2

Verizon was on notice, was represented by counsel, presented evidence and argument, and appealed the judgment to Costa Rica's highest court. The district court saw through Verizon's attempt to peddle speculation and innuendo to smear the integrity of the competent and well-respected Costa Rican judges who resolved this case. Far from an abuse of discretion, the district court's due process and integrity rulings were consistent with well-established law.

Finally, Verizon insists that it did not receive all the discovery it asked for under Rule 56(d). But the parties already engaged in discovery in Costa Rica, and New York courts regularly resolve judgment-recognition actions like this one on the papers. Even setting all that aside, the district court did not abuse its discretion in declining to give Verizon a year to conduct extensive fact discovery based on nothing more than "speculation" and "conclusory statements." JA571-73.

Verizon has had its day—indeed, its many years—in court, where it litigated these issues "in a full and fair proceeding." SA24. After Verizon "los[t] on the merits" at every turn, SA25, it is time for this dispute to end. Trejos Hermanos therefore respectfully requests that this Court affirm the district court's judgment.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by deferring, as a matter of comity, to the Costa Rican courts' subject-matter jurisdiction determination or abused its discretion by recognizing the Costa Rican judgment over Verizon's other arbitration-related objections.

2. Whether the district court abused its discretion by recognizing the Costa Rican judgment over Verizon's objection that the Costa Rican proceedings lacked integrity and violated due process.

3. Whether the district court abused its discretion under Rule 56(d) by partially denying Verizon's request for discovery.

## STATEMENT OF THE CASE

### A. Statutory Background

New York has traditionally been a "generous forum" for enforcement of foreign money judgments. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 239 (2d Cir. 2012) (quoting *Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 79-80 (N.Y. 2010)). That "liberal[]" approach is embodied by New York's Recognition Act, which aims to "provide a ready means for foreign judgment-creditors to secure routine enforcement of their rights in the New York courts." *Id.* at 242-43.[1]

---

[1] New York's Recognition Act has long been modeled on the Uniform Foreign-Country Money Judgments Recognition Act. Thus, in 2021 the legislature

4

Under New York's Recognition Act, final and conclusive foreign judgments are presumptively enforceable, subject to exceptions that the party resisting recognition bears the burden of establishing. *See id.* at 239; CPLR § 5304. The Act contains two sets of exceptions: mandatory and discretionary.

The mandatory exceptions, listed in Section 5304(a), apply to judgments rendered without subject-matter jurisdiction, judgments rendered without personal jurisdiction over the defendant, and judgments rendered under a judicial system that employs procedures incompatible with due process. CPLR § 5304(a). Courts "may not" recognize a foreign judgment if the party resisting recognition establishes one of these three grounds. *Id.*

Section 5304(b) specifies discretionary grounds under which a court "need not" recognize a foreign judgment. CPLR § 5304(b). Under that provision, courts may deny recognition of a judgment when, among other things, the "judgment . . . is repugnant to the public policy" of New York or the United States, *id.* § 5304(b)(3), the foreign proceeding "was contrary to an agreement" to arbitrate, *id.* § 5304(b)(5), the judgment was "rendered in circumstances

---

amended the Act to bring it up to date with the 2005 version of the Uniform Act. *See* N.Y. Bill Jacket, 2021 S.B. 523, Ch. 127.

5

that raise substantial doubt about the integrity" of the foreign proceedings, *id.* § 5304(b)(7), or "the specific proceeding" in question was incompatible with due process, *id.* § 5304(b)(8). If the party resisting recognition proves one of these grounds, the court retains discretion nonetheless to recognize the judgment. *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 181 (2d Cir. 2017) (citing *Byblos Bank Eur., S.A. v. Sekerbank Turk Anonym Syrketi*, 10 N.Y.3d 243, 248 (N.Y. 2008)).

### B. Factual Background

A quarter century ago, the Instituto Costarricense de Electricidad ("ICE"), a Costa Rican public agency, sought bids for the printing and production of telephone directories. SA1; JA729. A group of three corporate affiliates jointly submitted a bid, JA715-16, 729, and the entities' ultimate parent company—GTE Corporation—agreed to be "jointly liable" for "all obligations that this Consortium may acquire" if their bid was selected, JA476. The GTE Consortium won the bid and executed a contract with ICE in 2000. SA1-2; JA729-30.

Shortly thereafter, GTE Corporation merged with Bell Atlantic Corporation, forming Verizon. JA563. The three companies that comprised the GTE Consortium became Verizon entities and issued "Statements of Continued

6

Commitment" with respect to their "rights and obligations" under the printing contract with ICE. JA731.

One of those entities, Verizon Information Services Costa Rica, LLC ("Verizon Costa Rica"),[2] subcontracted its printing obligations to Trejos Hermanos, a century-old, family-run printing house in Costa Rica. SA1-2; JA989-1014. Verizon Costa Rica and Trejos Hermanos agreed that the subcontract— the Master Purchase Agreement or "MPA"—would be "governed by and construed in accordance with" Costa Rican law and that they would arbitrate any disputes between them related to the agreement. JA1011, 1013.

The MPA required Trejos Hermanos to comply with "any and all technical requirements" imposed by Verizon Costa Rica. JA1002. After examining Trejos Hermanos' "facilities and equipment," Verizon Costa Rica forced Trejos Hermanos to lease new warehouses and "modernize its equipment." JA736-37, 776-81. Trejos Hermanos took out substantial loans to "carry out" this "transformation[]" of its operations based on the "volume of work" it was slated to receive under the subcontract. JA647-49.

---

[2] Verizon holds a 65% stake in Verizon Costa Rica's "parent company." SA2.

Then came the breach. In 2004, Verizon Costa Rica proposed to ICE that it remove certain provinces and cities from the Costa Rican directories. JA732-34. Verizon Costa Rica then implemented the proposed changes unilaterally. SA2; JA732. When ICE objected, Verizon Costa Rica failed to remedy its breach, so ICE terminated the printing contract. SA2; JA732-34. Shortly thereafter, Verizon Costa Rica terminated the MPA with Trejos Hermanos. SA2; JA736.

This "abrupt termination" spelled disaster for Trejos Hermanos. JA307. Without the subcontract, it could no longer sustain the "debt[]" it had "generated" to accommodate Verizon Costa Rica's technical specifications. JA301-07. After the termination, Trejos Hermanos became insolvent and ultimately shuttered operations. JA301-07.

### C. Procedural Background

#### 1. *The Costa Rican proceedings*

To recover damages resulting from the breach of contract, Trejos Hermanos sued ICE, Verizon Costa Rica, and Verizon in Costa Rica's Tribunal Contencioso Administrativo y Civil de Hacienda, *i.e.*, the Administrative and Civil Finance Court ("Administrative Court"). SA2; JA628-712. The parties

8

engaged in protracted litigation for over eight years, which eventually ended with a judgment for Trejos Hermanos against Verizon and Verizon Costa Rica.

The Costa Rican courts first decided the question of subject-matter jurisdiction. Verizon argued that the MPA's arbitration clause meant that the dispute had to be arbitrated and that the Administrative Court lacked jurisdiction. JA1187. The Administrative Court rejected that argument, reasoning that it retained jurisdiction over the suit due to the claims' connection to ICE and that the MPA's arbitration clause did not extend to non-signatories (like Verizon). JA1179, 1187. On interlocutory appeal, the Supreme Court of Justice agreed that the Administrative Court had jurisdiction because the claims involved "the financial liability of the Public Administration (including the Autonomous Institutions, such as ICE)," which was both a co-defendant and the counterparty to the parent agreement. JA910. The Supreme Court of Justice also held that, as a matter of Costa Rica law, the arbitration clause did not extend to non-signatories. JA1187-88. The case was then remanded to the Administrative Court for adjudication on the merits.

In a ninety-five-page opinion, the Administrative Court found that Verizon Costa Rica willfully breached its contract with Trejos Hermanos and was thus liable for damages. JA764-65, 775-78, 782-84. ICE was found not liable.

JA804. The court once again rejected Verizon's argument that the court lacked subject-matter jurisdiction, finding that the Supreme Court of Justice's earlier decision precluded the argument. JA742-43. As to liability, the court explained that, under Costa Rican law, liability may be extended, notwithstanding corporate formalities, to encompass any "economic interest group" formed when groups "maintain common links and interests and coordinate their activities to achieve a certain common objective" such that "there is control, autonomy and unity of behavior in the market." JA770-71. Applying this doctrine, it concluded that Verizon was jointly and severally liable for Verizon's Costa Rica's willful breach of the MPA. JA770-72.

At trial, Verizon chose not to present any evidence on damages and opted against examining "both Trejos Hermanos's expert and the [Administrative Court]'s independent expert." SA10; JA789. After an independent judicial expert assessed Trejos Hermanos' damages evidence, the court awarded $51,355,812 in damages,[3] along with statutory adjustments for indexation, interest, and legal fees. SA2; JA806-07.

_____

[3] Notably, Trejos Hermanos did not receive all of the damages it sought. The Administrative Court denied Trejos Hermanos' claim to $5,000,000 in "moral damages" and $7,912,999 in damages connected to Trejos Hermanos' lost "cash flow" from printing in the Dominican Republic. JA789-802, 1975-76.

Following judgment, Verizon appealed to the Supreme Court of Justice. The Supreme Court of Justice rejected each of Verizon's arguments on the merits. JA909-15. As for subject-matter jurisdiction, the Supreme Court of Justice once again explained that ICE's presence as a codefendant defeated Verizon's arguments and that ICE's ultimate lack of liability did not retroactively deprive the Administrative Court of jurisdiction. JA910-11. The court also reiterated that this litigation was consistent with Costa Rica's "arbitral rules" and rejected Verizon's attempt to relitigate the applicability of the MPA's arbitration provision. JA911.

Verizon moved for reconsideration, rearguing the merits and besmirching the Supreme Court of Justice for supposedly displaying "favoritism in favor of [Trejos Hermanos]" and acting in "bad faith." JA928. The high court rejected this procedurally improper challenge, explaining that Verizon's allegations were "reckless" and "unfounded" and that its decision was based on Verizon's failure to "demonstrat[e] that the law protected [its] claims." JA933.

## 2. *The New York proceedings*

After litigating in Costa Rica for nearly twelve years, and after Verizon exhausted its appellate rights, Trejos Hermanos brought an action in New York state court seeking enforcement of the judgment. JA19-46. Consistent

with New York's recognition statute, Trejos Hermanos filed a motion for summary judgment in lieu of a complaint. *See* CPLR §§ 3213, 5303; JA21. Verizon removed the action to federal court on diversity grounds. JA14-17. Once in federal court, Verizon refiled its motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. JA2-5.

Verizon responded by asking for at least a year to "seek[] certain discovery" pursuant to Rule 56(d). SA3; *see* JA2372. In its Rule 56(d) declaration, Verizon claimed that it needed time to "have an expert prepare a damages report" and to have "a Costa Rican law expert prepare a report" on Verizon's "arbitration-based defenses" to recognition and Verizon's challenge to the "integrity" of the Costa Rican proceedings. JA536, 538-40, 542. Verizon also sought fact discovery, asserting that it planned to use depositions and requests for production to "explore" Trejos Hermanos' decision to join ICE as a defendant in the lawsuit. JA535-36, 542. Verizon also vaguely asserted a need for "discovery related to the bargained-for arbitration provision" that might lead to "triable issues of fact." JA540. And, because Verizon claimed to have "reason to believe" that Trejos Hermanos or its counsel "may have had relationships with members of the Costa Rican judiciary," Verizon sought "to serve discovery to learn if there were any *ex parte* communications" between Trejos

12

Hermanos and any members of the "Costa Rican judiciary or government." JA541-42.

The district court held a hearing on Verizon's requests, where it repeatedly pressed Verizon to be more "specific" regarding its requested fact discovery. JA2367, 2372. The district court ultimately granted Verizon's requests for expert discovery.[4] JA570-71. But it denied Verizon's requests for fact discovery because, "[f]or the most part," Verizon did not adequately identify the "specific facts it need[ed]" to oppose summary judgment or explain how those facts were "material." JA572. The court also concluded that Verizon's fact discovery requests were based on "speculation" and "conclusory statements," which is "insufficient" under Rule 56(d).[5] JA571-73.

Once discovery concluded, Trejos Hermanos renewed its motion for summary judgment. JA8. The court held oral argument on the motion, and ultimately granted it in a thorough thirty-two-page opinion. SA1-32.

---

[4] Verizon (at 16, 48 n.3) suggests that the "district court allowed only limited expert discovery." But Verizon acknowledged below that the district court's ruling did not in any way limit Verizon's ability "to prepare expert reports relating to its defenses." JA548-49.

[5] Shortly after this decision, the case was reassigned from Judge Ronnie Abrams to Judge Jennifer Rochon. *See* Verizon Br. 8; JA8.

13

In that decision, the district court deferred to the Costa Rican courts' determination of their own subject-matter jurisdiction. SA12-13, SA24-25. The court stressed that it was undisputed that the Administrative Court "had the competence to decide" whether it had subject-matter jurisdiction and that the Supreme Court of Justice has the "final authority on that question of law in Costa Rica." SA25 (citation omitted). And, citing this Court's decision in *ICC Chemical Corp. v. TCL Industries (Malaysia) SDN*, 206 F. App'x 68 (2d Cir. 2006), the court explained that, because the Costa Rican courts had rejected Verizon's subject-matter jurisdiction challenge in "full and fair" proceedings, it would "not revisit" this question "as a matter of comity." SA12-13, 24-25. For all these reasons, the court determined that Verizon failed to raise a "genuine issue[] of fact related to subject matter jurisdiction that would preclude enforcement of the Judgment here." SA12.

The applicability of the arbitration clause, the district court concluded, also was a question of Costa Rican law. SA23. Accordingly, the Costa Rican courts' "determination as to the applicability of the arbitration provisions" was entitled to "respect[]" as a matter of comity for similar reasons. SA25. Thus, following "the approach set forth" by this Court in *ICC Chemical*, the court

declined to deny recognition as a discretionary matter based on the MPA's arbitration clause. SA26-27.

Finally, the district court rejected Verizon's ragbag of arguments that the Costa Rican proceedings lacked integrity and were incompatible with due process, and that the judgment was repugnant to U.S. and New York public policy. SA13-23, 27-29. The court found that Verizon offered only naked speculation that failed to raise substantial doubts about the integrity of the Costa Rican proceedings. SA28. As for due process, the court noted that the cases cited by Verizon recognized that the "international concept of due process" governs recognition actions; that Verizon was afforded notice and the opportunity to be heard; and that "more expansive" foreign substantive law did not make the judgment incompatible with due process. SA14-23 (citations omitted). Likewise, the court concluded that Verizon did not come close to establishing that the judgment was repugnant to public policy, which requires showing that the judgment was "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." SA17 (citation omitted). That New York courts applying New York law might have reached a different result, the court explained, was not enough to deny recognition. *See, e.g.*, SA16-17.

Accordingly, the district court granted Trejos Hermanos' motion for summary judgment and ordered enforcement of the judgment. SA31-32.

## STANDARD OF REVIEW

This Court generally reviews "an award of summary judgment *de novo*." *Glob. Network Commc'ns, Inc. v. City of New York*, 562 F.3d 145, 150 (2d Cir. 2009). But CPLR § 5304(b)'s grounds for refusing to recognize a foreign judgment are "committed to the District Court's discretion," and thus decisions denying recognition under Section 5304(b) are reviewed for abuse of discretion. *Thai-Lao*, 864 F.3d at 181 (citing *Byblos Bank*, 10 N.Y.3d at 248); *accord Naranjo*, 667 F.3d at 239.

A district court's denial of a Rule 56(d) motion is reviewed for abuse of discretion. *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023).

## SUMMARY OF ARGUMENT

I. Verizon asserts that the MPA's arbitration clause barred the district court from recognizing the judgment on three different statutory grounds: (1) the Costa Rican courts lacked subject-matter jurisdiction; (2) the Costa Rican proceedings were "contrary" to the MPA's arbitration clause; and (3) the Costa Rican judgment is "repugnant" to public policy favoring arbitration. But the Costa Rican courts rejected Verizon's arbitration-related

16

arguments after extensive litigation, defeating Verizon's first two grounds. And all three of Verizon's proffered grounds fail on their merits.

A.     The Costa Rican courts determined, in a full and fair proceeding, that the MPA's arbitration provision was inapplicable and that the Administrative Court had subject-matter jurisdiction.  As the district court recognized, those findings were entitled to deference, as a matter of comity, on the subject-matter jurisdiction and "contrary to" grounds.  And because the Costa Rican court with final, binding authority on these questions rejected Verizon's arguments, any "independent" assessment of Costa Rican law would lead to the same result.

B.     Following well-settled law, the district court correctly concluded that Verizon failed to satisfy its burden of showing that any of the arbitration-related grounds applied.  On appeal, Verizon advances several new (forfeited) arguments but provides no Costa Rican legal authority for the proposition that the Costa Rican courts lacked subject-matter jurisdiction or that the proceedings contravened Verizon's supposed right to compel arbitration under the MPA—an agreement to which it was not party.  And while Verizon might disagree with the Costa Rican courts' conclusion that the MPA's arbitration clause does not extend to non-signatories, that conclusion does not render the

17

judgment "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense."  Moreover, Verizon fails to reckon with the fact that both the "contrary to" and public policy grounds are reviewed for abuse of discretion.

II.     Faithfully applying the narrow due process and integrity nonrecognition standards, the district court correctly concluded that Verizon was afforded due process and that Verizon's "speculation" failed to call into question the integrity of the Costa Rican proceedings.  The due process ground concerns itself with the procedures a litigant received; Verizon received ample procedural protections in the Costa Rican proceedings.  Verizon's effort to transform its substantive gripes with the outcome of the Costa Rican proceedings into a "due process" argument lacks any support.  As for its integrity argument, Verizon points to no evidence of corruption, and its own expert renounced any contention that the Costa Rican courts engaged in fraud.  And, in all events, even if the district court *could* have denied recognition based on Verizon's arguments, it certainly was not *required* to.

III.    The district court did not abuse its discretion by giving Verizon only some of the discovery it sought under Rule 56(d).  The parties already conducted discovery in Costa Rica, and New York courts routinely decide judgment-recognition actions on the papers.  Verizon failed to satisfy its

18

burden under Rule 56(d). Verizon did not explain with specificity how most of the "facts" it sought to establish were material, and its requests for fact discovery were based on little more than speculation and conclusory statements.

## ARGUMENT

### I. The District Court Properly Rejected Verizon's Arbitration-Related Objections to Recognizing the Judgment

New York's Recognition Act "was designed to promote the efficient enforcement of New York judgments abroad by assuring foreign jurisdictions that their judgments would receive streamlined enforcement" in New York. *Naranjo*, 667 F.3d at 241 (quoting *CIBC Mellon*, 100 N.Y.2d at 221). Verizon does not dispute the "presumptive enforceability of the Costa Rican Judgment" under the Act. JA574; SA 9-11. Rather, it invokes various grounds for nonrecognition under CPLR § 5304.

Verizon's first set of arguments rely on the MPA's arbitration clause. According to Verizon (at 18, 26-34), the arbitration clause required the district court to deny recognition because: (1) the Costa Rican courts lacked subject-matter jurisdiction, CPLR § 5304(a)(3); (2) the Costa Rican proceedings were "contrary" to an agreement to arbitrate, *id.* § 5304(b)(5); and (3) the Costa

Rican judgment is "repugnant" to public policies favoring arbitration, *id.* § 5304(b)(3).[6] Each argument fails multiple times over.

### A. The District Court Appropriately Gave Deference to the Costa Rican Courts' Subject-Matter Jurisdiction and Arbitrability Determinations

Verizon first faults the district court for not revisiting the jurisdictional and arbitrability challenges that the Costa Rican courts rejected. But, as the district court recognized, principles of international comity support "respect[ing]" the Costa Rican courts' resolution of these "question[s] of Costa Rican law" and denying Verizon a "second bite at the apple." SA25 (citations omitted). And, because the highest court in Costa Rica rejected Verizon's Costa Rican law arguments, any "independent" assessment would lead to the same result. *Contra* Verizon Br. 22, 26.

### 1. *Deference was appropriate as a matter of comity*

a. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). It functions as a "golden rule" among nations. *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 75 (3d Cir.

---

[6] Below, Verizon made several other public policy arguments. SA16-23. Verizon has abandoned those arguments on appeal. *Higazy v. Templeton*, 505 F.3d 161, 168 n.7 (2d Cir. 2007).

1994). One of comity's "central precept[s]" is that, "when possible, the decisions of foreign tribunals should be given effect in domestic courts" to foster "international cooperation" and promote "predictability and stability." *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (citation omitted).

U.S. courts therefore "accord considerable deference to foreign adjudications as a matter of comity." *Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d Cir. 2001) (collecting cases and authorities); *see Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petrol. Corp.*, 40 F.4th 56, 63 (2d Cir. 2022) (courts "defer to proceedings taking place in foreign countries" under "the principle of international comity" (citation omitted)). That deference is heightened when dealing with "the judgment of foreign courts construing their own laws." *United States v. Trabelsi*, 845 F.3d 1181, 1192 (D.C. Cir. 2017); *see, e.g.*, *Navani v. Shahani*, 496 F.3d 1121, 1128 (10th Cir. 2007) (declining to "second guess" a foreign court's application of "its domestic law" (citation omitted)).

Comity is thus a substantial obstacle for any litigant who seeks a "second bite at the apple" after "losing" in litigation abroad. SA25 (citation omitted). For example, in *ICC Chemical Corp. v. TCL Industries (Malaysia) SDN*, 206 F. App'x 68 (2d Cir. 2006), a Singapore trial court rejected a defendant's argument that the court "lacked subject matter jurisdiction" due to an arbitration

21

agreement, finding the "parties made no such agreement," *id.* at 69. The losing party responded by filing a declaratory action in the United States to establish that "any judgment rendered by the Singapore court" would not be "subject to recognition in New York." *Id.* The district court dismissed that action after concluding it "was not in a position" to revisit the Singapore Court's finding that the parties "never agreed to arbitrate." *Id.*

This Court affirmed. Because the soon-to-be judgment debtor had the "opportunity to fully and fairly litigate the arbitrability issue before the Singapore Court," this Court held it was "proper to grant preclusive effect to the Singapore Court's finding as a matter of comity." *Id.* at 70. This Court also explained that, if the Singapore Court issued a money judgment, this "preclusive" finding would bar relitigation in a judgment recognition action of whether there had actually been an "agreement to arbitrate." *Id.*

Here, the "Costa Rican courts expressly determined in a full and fair proceeding" that the MPA's arbitration provision "did not apply" and that "the [Administrative Court] had subject-matter jurisdiction to decide the dispute." SA24. As this Court reiterated in *ICC Chemical*, "[c]omity is warranted under these circumstances." 206 F. App'x at 70; *accord Servipronto De El Salvador, S.A. v. McDonald's Corp.*, 837 F. App'x 817, 819-20 (2d Cir. 2020).

22

The district court thus correctly embraced the "approach set forth in *ICC Chemical*" and, "as a matter of comity," granted "preclusive effect" to the Costa Rican courts' findings on these "questions of Costa Rican law." SA13, 17, 24, 26. In so doing, the district court joined other courts in this circuit in declining to "second-guess" a foreign court's holdings in judgment-recognition proceedings governed by New York law. *See, e.g.*, *Servipronto*, 837 F. App'x at 819 (deferring to Salvadoran courts' "conclusive[]" holdings regarding plaintiff's "claim for interest" in light of "principles of comity"); *S.C. Chimexim S.A. v. Velco Enters. Ltd.*, 36 F. Supp. 2d 206, 216 (S.D.N.Y. 1999) (Chin, J.) (recognizing Romania judgment after declining to "second-guess" Romanian appellate court's determination that the parties' agreement did not "bar[] suit").

b. Verizon (at 20-21, 25) erroneously suggests that the district court believed it was "compelled" to grant preclusive effect "as a matter of res judicata or issue preclusion" instead of "as a matter of comity." That is not a faithful account of the district court's opinion, which invoked "comity" each time it "declin[ed] to revisit" a question of Costa Rican law that Costa Rica's courts had resolved. SA13, 17, 24. The district court also explained that it was adopting the "approach set forth in *ICC Chemical*," SA26; *accord* SA12-13, 17, a case

where all agree this Court "accept[ed] the adjudication of a foreign tribunal on a particular issue" by giving it "preclusive effect . . . as a matter of comity," *ICC Chem.*, 206 F. App'x at 70; *accord* Verizon Br. 25.

Verizon (at 22) also claims that an "independent determination" of the Administrative Court's jurisdiction under Costa Rican law was "require[d]" by Section 5304(a)(3), which prohibits recognition of a foreign judgment if "the foreign court" lacked "jurisdiction over the subject matter."  But the "existence of a foreign judgment generally supports a presumption that a foreign court had subject-matter jurisdiction under its own law."  Restatement (Fourth) of Foreign Relations Law § 483 n.7 (2018) (collecting cases).[7]  U.S. courts thus "generally deny recognition of a foreign judgment for lack of subject-matter jurisdiction only if U.S. law grants *exclusive* subject-matter jurisdiction to U.S. courts."  *Id.* (emphasis added).  Accordingly, the district court's "respect[]" for the Costa Rican courts' "determination" of subject-matter

---

[7]  New York courts look to the Restatement in interpreting the Recognition Act.  *See, e.g.*, *Byblos Bank Eur., S.A. v. Syrketi*, 12 Misc. 3d 792, 798 (N.Y. Sup. Ct. 2006); *CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 226 (N.Y. 2003).  That makes sense because, like most States, New York based the Recognition Act on the Uniform Foreign-Country Money Judgments Recognition Act.  *See supra* pp. 4-5 n.1.

jurisdiction under Costa Rican law, SA25, does not render Section 5304(a)(3) "meaningless," *contra* Verizon Br. 22.

Verizon (at 26, 32) next contends that this Court's decision in *ICC Chemical* requires an "independent determination" of the foreign court's subject-matter jurisdiction and a more "thorough" analysis before comity can be extended. But *ICC Chemical* focused only on whether the Singapore court "had subject matter jurisdiction to rule on the threshold question[s]" that the losing party sought to relitigate. 206 F. App'x at 70. Verizon does not dispute that "the Supreme Court of Justice had jurisdiction and final authority" to resolve "whether the arbitration clause applied in this case" and whether that clause deprived the Administrative Court of jurisdiction. SA27 n.4; JA2074-76; *see also* SA25 (district court citing testimony by Verizon's expert that the Administrative Court "had the competence to decide" its jurisdiction (citation omitted)).

The district court was therefore correct to recognize that, under principles of comity, Verizon does not get a "second bite at the apple" and its "attack on [the Costa Rican courts'] jurisdiction over the merits" poses no "impediment" to recognition under New York's Recognition Act. *ICC Chem.*, 206 F. App'x at 70; *see* SA25. And, as in *ICC Chemical*, "protracted discussion on

25

that score is not necessary" since Verizon had "the opportunity to fully and fairly litigate" these issues for over a decade in Costa Rica. 206 F. App'x at 70; *see* SA24.

Finally, Verizon (at 23-24, 32) begrudgingly acknowledges that a district court "may defer to a foreign decision as a matter of comity," but insists the district court was not "bound" to do so here. But Verizon fails to appreciate the significance of the Supreme Court of Justice's "final authority" over these questions of Costa Rican law—which the district court repeatedly emphasized and Verizon has never disputed. SA24-25, 27 n.4; JA2074-75, 2214. As the Supreme Court explained in *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 585 U.S. 33 (2018) (cited at Verizon Br. 23-24), under general principles of "comity," the "appropriate weight" to give to "a foreign state's views about the meaning of its own laws" depends on "the role and authority of the entity . . . offering the statement," *id.* at 43 (citation omitted). The Court suggested that a "decision" from a foreign state's "highest court" is "binding on the federal courts." *Id.* (analogizing a federal court's assessment of foreign law to federal court's assessment of state law) (citations omitted); *see Hilton*, 159 U.S. at 194.

26

Here, Verizon's Costa Rican law arguments were rejected by the "highest court" in Costa Rica. JA1175, 2074; SA3. The district court gave appropriate weight to that court's "final and binding determination of [Costa Rican] law" as a matter of comity. *Galloway v. Martorello*, 2023 WL 5229231, at \*7 (E.D. Va. Aug. 14, 2023); *see* JA1175, 2074. Any other approach to questions that the Supreme Court of Justice "conclusively" addressed would "contraven[e] the principles of comity that Article 53 set out to codify." *Servipronto*, 837 F. App'x at 819.

### 2. *An "independent" inquiry leads to the same result*

Verizon (at 20-23, 26-27) claims the district court should have made an "independent determination" of these questions of Costa Rican law instead of giving "preclusive effect" to the Costa Rican courts' conclusions. That is mistaken for all of the reasons discussed above. *Supra* pp. 20-27. But, regardless, an "independent" inquiry into Costa Rican law would lead to the same result since Costa Rica's highest court—the final arbiter of questions of Costa Rican law—has rejected Verizon's Costa Rican law arguments on their merits.

Rule 44.1 of the Federal Rules of Civil Procedure provides that, when "determining foreign law," a district court "may consider any relevant material or source" and its ultimate "determination must be treated as a ruling on

27

a question of law." Fed. R. Civ. P. 44.1. The rule's purpose is "to make the process of determining" foreign law as "identical" as possible to how courts "ascertain[] domestic law." *Animal Sci. Prods.*, 585 U.S. at 42 (citation omitted).

Thus, when interpreting foreign law, U.S. courts should "follow the most recent decisions of [a foreign] state's highest court." *SS&C Techs., Inc. v. Consultores Pueblo Bonito, S.A. de C.V.*, 847 F. App'x 527, 529 (10th Cir. 2021) (citation omitted); *see Animal Sci. Prods.*, 585 U.S. at 42; *Hilton*, 159 U.S. at 194. A foreign high court decision is the very sort of "authoritative answer to a foreign legal question" that this Court has recognized should guide district courts. *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 414 (2d Cir. 2020) (per curiam).

Again, the Supreme Court of Justice has "final authority" over these questions of Costa Rican law. SA24-27; JA2074-75, 2214. Verizon (at 15) second-guesses that court's rulings by pointing to the opinions of the "Costa Rican law expert" it hired. That is as wrong as it sounds: U.S. courts do not credit litigants' self-serving declarations over authoritative rulings from a sovereign nation's highest court. *See, e.g.*, *Bugliotti*, 952 F.3d at 414 (foreign court's interpretation of its own law is "preferable" to other materials); *Bodum*

*USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628-30 (7th Cir. 2010) (courts credit "statutes and decisions" over "litigants' self-serving declarations" when interpreting foreign law).  Doing so would be particularly improper here since Verizon's own legal expert agrees that the Supreme Court of Justice had "proper jurisdiction" to resolve these questions and that its decisions are "binding" as "a matter of Costa Rican law."  JA2074.

In short, because the district court opted to "respect[]" the Supreme Court of Justice's rulings, SA25, it relied on the "Costa Rican legal source" "most relevant" to an independent assessment of the substance of Costa Rican law, *S.E.C. v. Juno Mother Earth Asset Mgmt., LLC*, 2012 WL 685302, at *5 (S.D.N.Y. Mar. 2, 2012).  The district court's judgment can therefore be affirmed on that alternative basis.  *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022).

### B. Verizon Failed to Show that the MPA's Arbitration Clause Precluded Recognition

Insisting that the district court should not have "respect[ed] the Costa Rican courts' determination[s]," SA25, Verizon (at 26-34) contends that the MPA's arbitration clause precluded recognition on three statutory grounds. *See supra* pp. 19-20.  As the party resisting recognition, Verizon had the burden of establishing application of a statutory exception.  CPLR § 5304(c).

Verizon did not do so. The district court's straightforward application of set-tled law was correct and, in all events, well within its discretion.

### 1. *Verizon failed to show that the Costa Rican courts lacked subject-matter jurisdiction*

A party resisting recognition of a foreign judgment can overcome New York's presumption of enforcement if it shows that the foreign court lacked subject-matter jurisdiction. CPLR § 5304(a)(3), (c).

a. Verizon has never shown that the applicability of an arbitration clause even bears on the question of subject-matter jurisdiction under Costa Rican law. Before the district court, Verizon summarily asserted that the Ad-ministrative Court "lacked jurisdiction because . . . the dispute should have been arbitrated." Verizon's Summ. J. Br. 25, Dist. Ct. Dkt. 53. But it cited no authority nor provided any explanation supporting that proposition.[8] It like-wise cites no legal authority on appeal. Verizon's failure to provide "developed argumentation" constitutes forfeiture. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75-76 (2d Cir. 2001) (citations omitted); *Rein v. McCarthy*, 803 F. App'x 477, 481 n.3 (2d Cir. 2020).

---

[8] Instead, Verizon referenced cases concerning an entirely separate ground for nonrecognition—whether a foreign judgment was "contrary to" a valid and enforceable arbitration clause. *See* Verizon's Summ. J. Br. 21, 25, Dist. Ct. Dkt. 53.

Even setting forfeiture aside, there is no independent reason to conclude that even an applicable arbitration clause would deprive Costa Rican courts of subject-matter jurisdiction. Whether Costa Rican courts possessed subject-matter jurisdiction is a question of Costa Rican law. *See* Restatement (Fourth) of Foreign Relations Law § 483 cmt. F; *accord Wimmer Canada, Inc. v. Abele Tractor & Equip. Co.*, 750 N.Y.S.2d 331, 334 (N.Y. App. Div. 2002); *Ackermann v. Levine*, 788 F.2d 830, 838 n.5 (2d Cir. 1986). And Verizon has never identified any Costa Rican caselaw or statute divesting its courts of subject-matter jurisdiction due to an arbitration clause.[9] Consequently, Verizon has not satisfied its burden of showing a lack of subject-matter jurisdiction. *See S.C. Chimexim S.A.*, 36 F. Supp. 2d at 216.

    b.    Even if the existence of an arbitration clause were jurisdictional under Costa Rican law, the district court did not err in deferring to Costa

---

[9] Under U.S. law, the applicability of an arbitration clause generally is not jurisdictional. *See, e.g., City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880-81 (8th Cir. 2017) ("[A]n arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction"); *Auto. Mech. Local 701 v. Vanguard Car Rental*, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional . . . ."); *Morelli v. Alters*, 2020 WL 1285513, at *6 (S.D.N.Y. Mar. 18, 2020); *cf. In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) (noting that parties can waive right to arbitration). *But see Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014).

Rican courts' determination of their own subject-matter jurisdiction as a matter of comity. As discussed, *supra* pp. 24-25, U.S. courts generally defer to foreign courts' conclusions regarding their domestic law, and deny recognition of a foreign judgment for lack of subject-matter jurisdiction "only if U.S. law grants exclusive subject-matter jurisdiction to U.S. courts," such as with rights to U.S. land or U.S. intellectual property protections. Restatement (Fourth) of Foreign Relations Law § 483 n.7. Verizon raised—and the Costa Rican courts rejected—the argument that the MPA's arbitration clause deprived the courts of subject-matter jurisdiction. JA719, 742-43, 910-11. Verizon is not entitled to "a second bite at the apple" just because it disagrees with the Costa Rican courts' conclusion. *ICC Chem.*, 206 F. App'x at 70; *see also S.C. Chimexim S.A.*, 36 F. Supp. 2d at 216. Thus the district court did not err in deferring, as a matter of comity, to the Costa Rican courts' determination of their own subject-matter jurisdiction "in a full and fair proceeding." SA24.

Verizon (at 26) protests that such deference might "incentiviz[e] U.S. citizens to default when sued abroad," because New York courts supposedly "reexamine jurisdictional issues in cases where the foreign judgment was entered on default." Those concerns are misplaced. The authority Verizon (at 26) cites concerns the reexamination of "issues" of "*personal* jurisdiction"—

32

not subject-matter jurisdiction. *See Sung Hwan Co. v. Rite Aid Corp.*, 847 N.Y.S.2d 78, 79 (N.Y. App. Div. 2007) (emphasis added). Subject-matter jurisdiction is a different creature. A foreign court is generally presumed to have "jurisdiction under its own law" when it issues a judgment, unless a judgment debtor can establish that U.S. law "grants exclusive subject-matter jurisdiction to U.S. courts." Restatement (Fourth) of Foreign Relations Law § 483 n.7. Verizon has not made that showing here.

Moreover, even if personal jurisdiction principles applied to issues of subject-matter jurisdiction, Verizon's argument still would fail. A party "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). Accordingly, there is nothing "absurd" about U.S. courts giving less deference to foreign courts' determinations in default judgment proceedings. *Contra* Verizon Br. 26. And the notion that parties will choose the risky tactic of taking a default judgment in foreign court in the hopes of convincing a U.S. court that the foreign court lacked subject-matter jurisdiction is farfetched.

33

In sum, Verizon has not satisfied its burden of showing that the arbitration clause was jurisdictional. And the district court did not err in deferring to the Costa Rican courts' determinations of their own subject-matter jurisdiction.

### 2. *Verizon failed to show that the judgment was contrary to an arbitration clause*

Article 53 provides that courts "need not" recognize a foreign judgment if the foreign proceeding "was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by a proceeding in that court." CPLR § 5304(b)(5). A district court is thus permitted—but not required—to deny recognition if the judgment debtor can establish that the foreign proceeding contravened an arbitration clause. *See Naranjo*, 667 F.3d at 239 (discretionary exceptions leave "nonrecognition to the court's discretion"); *Thai-Lao*, 864 F.3d at 181 (enforcement of foreign judgment under discretionary grounds committed to district court's discretion (citing *Byblos Bank*, 10 N.Y.3d at 248)).

Verizon argues that, for a hodgepodge of reasons, the district court should have declined to recognize the judgment because the Costa Rican proceedings were contrary to the MPA's arbitration clause. Many of these arguments are raised for the first time on appeal (and thus forfeited) or are

34

undeveloped (even on appeal). In all instances, Verizon's arguments fail on the merits.

a. The district court followed well-settled law in deferring, under principles of comity, to the interpretation of Costa Rica's highest court on questions of Costa Rican law. A searching review of the Costa Rican courts' arbitrability determinations was not warranted.

In the Costa Rican proceedings, Verizon repeatedly argued that the arbitration agreement between Verizon Costa Rica and Trejos Hermanos precluded the action. Each court rejected that argument. *See* JA719, 742-43, 910-11, JA1187-88. Those determinations "invalidate[] [Verizon's] argument" that the Costa Rican judgment was contrary to the MPA's arbitration clause. *ICC Chem.*, 206 F. App'x at 70. Consistent with that approach, courts applying New York law have summarily discarded arguments that a foreign proceeding was contrary to an agreement between the parties where the foreign courts rejected that argument. *See, e.g.*, *S.C. Chimexim S.A.*, 36 F. Supp. 2d at 216. And, as discussed, *supra* pp. 26-27, the case for deference is particularly strong here because Costa Rica's highest court affirmed the judgment and rejected Verizon's arguments. *See* JA909-15, 925-36.

Such deference is entirely consistent with New York's tradition of being a "generous forum" for enforcement of foreign judgments. *Galliano, S.A.*, 15 N.Y.3d at 79-80 (citation omitted). New York's Recognition Act is "motivated by an interest to *provide for* the enforcement of foreign judgments, not to prevent them." *Naranjo*, 667 F.3d at 241. Unsurprisingly, then, commentators have noted that courts rarely take the "opportunities CPLR 5304 offers to be less generous" in recognizing foreign judgments. Richard C. Reilly, *Practice Commentaries to Section 5304 (Grounds for Refusing Recognition, Generally)* (2021) (citation omitted).

Verizon (at 29, 33) faults the district court for traveling this well-trodden path, citing out-of-circuit cases where a court declined to recognize a foreign judgment on the basis of an arbitration clause. But these nonbinding cases are perfectly consistent with the district court's approach here.

For starters, in four of the five cases Verizon cites, the agreements were not governed by the law of the foreign nation that rendered the judgment. The agreements in *Galindo*, *Montebueno*, and *Nicor* each called for disputes to be arbitrated under *U.S. law. See Automotores Galindo, S.A. v. Ford Motor Co.*, 2015 WL 4606561, at *1 (S.D. Fla. July 31, 2015) (Michigan law); Br. of Appellee at *3, *Montebueno Mktg., Inc. v. Del Monte Foods Corp.-USA*, No. 12-

36

15958 (9th Cir. Aug. 29, 2012), 2012 WL 3911631, at *3 (California or United States law); *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1362 (S.D. Fla. 2003) (Texas law). And the *Tyco* court involved recognition of a German judgment that concerned an agreement governed by Austrian law. *Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc.*, 2006 WL 2924814, at *2 (W.D. Pa. Oct. 10, 2006).

What these cases illustrate is that U.S. courts afford less deference to a foreign court's interpretation of *another* nation's laws—and especially its interpretation of U.S. law—than that court's interpretation of its *own* laws. And rightly so. Comity concerns are heightened when a U.S. court is asked to pass judgment on a foreign court's application of its own law. *Cf. Trabelsi*, 845 F.3d at 1192; *Servipronto*, 837 F. App'x at 820; *Byblos Bank*, 10 N.Y.3d at 247. That is the situation here, as the MPA is governed by "the Laws of Costa Rica." JA1011.

Another key difference between this case and *Tyco* and *Galindo* is the defendants' participation in the foreign proceedings. The German judgment in *Tyco* was entered in default. 2006 WL 2924814, at *3. And the *Galindo* court stated that the defendant did not "meaningfully participate" in the Bolivian proceedings. 2015 WL 4606561, at *5. In fact, as the district court noted

below, *Galindo* relied primarily on the defendant's lack of participation to distinguish this Court's decision in *ICC Chemical*. *Id.*; SA26. Under principles of comity, "litigation should end *after* the parties have had an opportunity to present their cases fully and fairly," so courts are generally less deferential to foreign judgments where the defendant defaulted or did not meaningfully participate. *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985) (emphasis added).

Three of the cases Verizon cites are further distinguishable because they concerned foreign judgments and arbitral awards that directly conflicted with other tribunals' rulings. Before the foreign judgment was rendered in *Montebueno*, a U.S. district court had granted the defendant's motion to compel arbitration in California. 2012 WL 986607, at *1. Yet the foreign court continued with its proceedings and ultimately awarded the plaintiff damages more than a decade after the U.S. court had compelled arbitration. *Id.* In *Nicor*, the parties engaged in arbitration that produced an arbitral award before the foreign judgment was issued. 292 F. Supp. 2d at 1362-63. Rejecting the plaintiffs' position that the defendant waived its right to arbitration by litigating in Dominican court, *Nicor* granted preclusive effect to the arbitrator's decision and refused to "resurrect[]" the issue. *Id.* at 1371. *Chromalloy* is even further

afield. There, the court granted a plaintiff's petition to confirm an arbitral award notwithstanding an Egyptian court's purported nullification of that award, where the nullification occurred only after confirmation proceedings had commenced in U.S. court and despite an express contract provision forbidding appeal from the award. *In re Chromalloy Aeroservices*, 939 F. Supp. 907, 908 (D.D.C. 1996); *see also TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937 (D.C. Cir. 2007) (distinguishing *Chromalloy* on several grounds).

By contrast, here, the Costa Rican courts did not defy a U.S. court's order compelling arbitration or seek to undo an arbitral award. They simply applied Costa Rican law to a dispute arising in Costa Rica in proceedings where the parties fully litigated these very issues. *See* JA2054-55 (Verizon's expert conceding that Costa Rican courts addressed each of the legal issues discussed in his report). That is well within the heartland of what comity and New York's Recognition Act aim to protect. *See ICC Chem.*, 206 F. App'x at 69-70.

Finally, none of the cases Verizon cites involved the applicability of an arbitration clause to claims asserted against a non-signatory. And, as Verizon's own expert acknowledged, the "general rule" under Costa Rican law is that "arbitration clauses do not extend to third parties," JA1188, which is fatal

to Verizon's suggestion (at 29) that the Costa Rican proceedings were "plainly and indisputably 'contrary to an agreement' to arbitrate."

Verizon next makes two brand-new arguments for why recognition was inappropriate. First, Verizon (at 33) argues that the "Costa Rican courts never decided that the litigation was not contrary to an agreement to arbitrate" and thus deference to their decisions was not warranted. Second, Verizon (at 31) asserts that the Costa Rican proceedings were "contrary to an arbitration agreement" and that the judgment was "repugnant to U.S. public policy" because "Verizon Costa Rica *was* a party to the [MPA] and expressly demanded that the dispute be sent to arbitration."

Because Verizon failed to raise these arguments below, it forfeited them. *Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433, 437 (2d Cir. 2016). And, because Verizon "never made" these arguments below, the district court could not have "abused its discretion" by failing to consider them. *United States v. Santiago*, 2023 WL 3081697, at *2 (2d Cir. Apr. 26, 2023) (summary order).

Even if this Court looked past the forfeiture, Verizon's arguments would still fail. The Costa Rican courts repeatedly rejected Verizon's arbitrability arguments because Verizon was a non-signatory to the MPA and ICE's

40

presence meant that the courts retained jurisdiction notwithstanding the MPA's arbitration clause. *See, e.g.*, JA910-11. Verizon's own expert confirmed as much. JA1187-88; *see also* JA2054-55 (admitting that the Costa Rican courts considered and rejected all of the purported "legal errors" he identified).

In sum, the district court correctly deferred, as a matter of comity, to the Supreme Court of Justice's interpretation of Costa Rican law.

b. Even setting aside comity and deference, Verizon did not show that the judgment was contrary to an arbitration clause. Verizon's brief below made no meaningful attempt to explain why, *under Costa Rican law*, the MPA's arbitration clause precluded litigation against a nonparty. Instead, Verizon primarily relied on U.S. state and federal law authorities to support the notion that non-signatories can enforce arbitration agreements by estoppel. *See* Verizon's Summ. J. Br. 21-22, Dist. Ct. Dkt. 53. The only Costa Rican authority that Verizon invoked was its expert's assertions that there are "exceptions" under Costa Rican law to the "general rule" cited by the Supreme Court of Justice and that courts in Costa Rica have *sometimes* extended arbitration clauses to nonparties via those exceptions. *See id.* at 22 (citing JA2443).

41

Even now on appeal, Verizon has failed to explain why—under Costa Rican law—the MPA's arbitration clause necessarily precluded litigation against a nonparty. Again, Verizon (at 28, 31-32) points only to cases applying U.S. law, and argues that courts in Costa Rica have sometimes held nonparties to arbitration clauses. Verizon's own expert refused to say that the Costa Rica courts *should* have found the arbitration clause to be applicable, asserting only that it "could have." JA2072.

Nor did Verizon argue below that, under Costa Rican law, a party liable for breach of contract under the economic interest group theory *must* be able to enforce the arbitration provisions of the underlying contract. Verizon's Summ. J. Br. at 21-24, Dist. Ct. Dkt. 53. Verizon thus has no basis on which to argue that the district court abused its discretion in declining to deny recognition on that ground.

c.     Finally, Verizon (at 33-34) contends that the district court erred by looking to Costa Rican, rather than New York, law when assessing whether the Costa Rican litigation was "contrary to an agreement" to arbitrate. Below, Verizon presented no argument that New York arbitration law governed. *See* Verizon's Summ. J. Br. at 21-24, Dist. Ct. Dkt. 53. That argument is therefore forfeited. *Huron*, 817 F.3d at 437.

Regardless, Verizon's newfangled argument is wrong on the merits. To determine whether a foreign proceeding was "contrary to" an arbitration agreement, U.S. courts apply the law "chosen by" that agreement. Restatement (Fourth) of Foreign Relations Law § 484 n.6 (citing *Clientron Corp. v. Devon IT, Inc.*, 35 F. Supp. 3d 665, 681-82 (E.D. Pa. 2014); *Presley v. N.V. Masureel Veredeling*, 370 S.W.3d 425, 432-33 (Tex. App. 2012)). Costa Rican law governs the MPA. JA1011. Thus, the district court correctly decided whether the Costa Rican proceedings were "contrary to" an agreement to arbitrate by looking to Costa Rican law.

Verizon (at 34) suggests that *Galindo* supports a different conclusion because it decided the "contrary to" question under United States, rather than Bolivian, law. But Verizon neglects to mention that the agreement in *Galindo* called for application of Michigan law. 2015 WL 4606561, at *1. *Galindo* thus supports Trejos Hermanos, not Verizon. The MPA's choice-of-law provision governs.

Verizon's claim (at 33-34) that the district court should have looked to New York law because "New York law governs actions brought in the State of New York to enforce judgments from foreign countries" is incorrect. The authorities Verizon cites (at 33-34) address whether federal courts, sitting in

43

diversity, apply state or federal law in recognition actions. They do not suggest that the "contrary to" issue is analyzed under New York law. Quite the opposite: the very authorities Verizon cites look to foreign law. *See, e.g.*, *Servipronto*, 837 F. App'x at 820 (looking to Salvadoran law on res judicata). A contrary rule would be antithetical to the "principles of comity that Article 53 set out to codify," *id.* at 819, and would render choice-of-law provisions meaningless. Moreover, if Verizon were right, a foreign court's subject-matter jurisdiction too would be assessed under New York law. That cannot be right.

### 3. *Verizon failed to show that the judgment cannot be recognized as contrary to public policy*

Verizon's public policy arguments are no more availing. In New York, courts have discretion to deny recognition where the foreign judgment is "repugnant to the public policy" of New York or the United States. CPLR § 5304(b)(3). Courts may refuse to enforce a judgment on public policy grounds only if it is "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." *Sung Hwan*, 7 N.Y.3d at 82 (citation omitted). That standard is "high and infrequently met." *Ackermann*, 788 F.2d at 841. After all, as Judge Cardozo observed over a century ago, New York courts "are not so provincial as to say that every solution of a problem is wrong

because we deal with it otherwise at home." *Loucks v. Standard Oil Co. of N.Y.*, 224 N.Y. 99, 111 (1918).

On its face, declining to extend an arbitration clause to cover a non-signatory is not "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." *Sung Hwan*, 7 N.Y.3d at 82. In fact, under New York law, the "general rule is that only a party to an arbitration agreement is bound by or may enforce the agreement." *Degraw Const. Grp., Inc. v. McGowan Builders, Inc.*, 58 N.Y.S.3d 152, 154 (N.Y. App. Div. 2017) (citation omitted). Of course, exceptions to that "general rule" exist, *see id.* (citation omitted), but the contours of those exceptions are the very type of "policy decisions that assign rights based on assessments of what legal rules will produce the greatest economic good for society as a whole" that do not offend public policy, *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 480 n.3 (2d Cir. 2007) (citation omitted).

Verizon cites no case where a court applying New York law found that a foreign court's treatment of an arbitration clause justified not recognizing that court's judgment on public policy grounds. Instead, Verizon (at 30-31) relies entirely on two inapposite cases: *Nicor* and *Chromalloy*. As explained above, the foreign judgments in both cases were issued *after* arbitral awards already

45

had issued. *See Nicor*, 292 F. Supp. 2d at 1362-63; *Chromalloy*, 939 F. Supp. at 908. Thus, recognition would have required the U.S. courts to deny effect to earlier-in-time arbitral awards. Not so here.

In any event, neither *Nicor* nor *Chromalloy* applied New York's "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense" standard. And the expansive reading Verizon advocates would be at odds with this Court's teaching that differences in economic policy are not repugnant to public policy. *Viewfinder*, 489 F.3d at 480 n.3. Even beyond New York's particularly narrow approach to public policy, U.S. courts more generally "reject public-policy arguments based on conflicts between the foreign judgment and the forum's financial and economic regulations."[10]

In all events, both the "contrary to" and "public policy" provisions of New York's recognition statute are optional—not mandatory—grounds for

---

[10] Restatement (Fourth) of Foreign Relations Law § 484 n.4; *see also, e.g.*, *Tahan v. Hodgson*, 662 F.2d 862, 866-67 (D.C. Cir. 1981) (foreign judgment that pierced corporate veil without "compelling justification" did not offend public policy (citation omitted)); *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 443 (3d Cir. 1971) (foreign judgment awarding contract damages that would not be recoverable under Pennsylvania law did not violate public policy); *Hunt v. BP Expl. Co. (Libya)*, 492 F. Supp. 885, 888, 901 (N.D. Tex. 1980) (foreign judgment requiring defendant personally to pay for damages, despite contract provision expressly disavowing personal liability, did not offend public policy), *abrogated on other grounds*, 966 F.2d 1007 (5th Cir. 1992).

nonrecognition (a point that Verizon ignores). *See* CPLR § 5304(b). Thus, even if Verizon established these grounds, the district court retained discretion to recognize the judgment. *See Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 688 (7th Cir. 1987) (district courts have discretion to recognize foreign judgments "contrary to" an agreement between the parties or public policy); *cf. Naranjo*, 667 F.3d at 239 (Section 5304(b)'s exceptions are left to the district court's discretion); *Thai-Lao*, 864 F.3d at 181 (similar).

## II.   The District Court Did Not Abuse Its Discretion in Recognizing the Judgment Over Verizon's Due Process and Integrity Objections

Grasping at straws, Verizon (at 34-43) next argues that the Costa Rican proceedings violated due process and lacked integrity. Verizon all but ignores the well-established standards governing these grounds for nonrecognition. Application of these standards defeats Verizon's arguments for all the reasons provided by the district court, and more.

### A.   The Due Process and Integrity Grounds Are Narrow

1.   New York's Recognition Act provides two nonrecognition grounds based in due process principles: one concerning the "judicial system" as a whole; another, the "specific proceeding" leading to the judgment. CPLR

47

§ 5304(a)(1), (b)(8).[11] Under the proceeding-specific provision, courts *may* (but need not) deny recognition where "the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law." *Id.* § 5304(b)(8).

The applicable standard is well settled. A foreign judicial system is compatible with due process so long as it provides "overall fairness," *CIBC Mellon*, 100 N.Y.2d at 222, even if its procedures are not "as generous as those of New York," *Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 973 N.Y.S.2d 197, 198 (N.Y. App. Div. 2013). Some courts have dubbed this limited form of due process "international due process." *Tropp v. Corp. of Lloyd's*, 2008 WL 5758763, at *15 (S.D.N.Y. Mar. 26, 2008), *aff'd*, 385 F. App'x 36 (2d Cir. 2010) (quoting *Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 480 (7th Cir. 2000)). Others refer to "basic" or "fundamental" fairness. *See, e.g.*, *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d

---

[11] Until recently, the Recognition Act only contained the systemwide due process ground. But courts often went beyond the statutory text and considered whether the specific proceedings were compatible with due process. *See* Restatement (Fourth) of Foreign Relations Law § 484 n.9. In 2021, the Legislature amended the Recognition Act to bring it into "full conformity" with the 2005 Uniform Act, which (consistent with judicial practice) added a proceeding-specific due process ground for nonrecognition. *See* N.Y. Bill Jacket, 2021 S.B. 523, Ch. 127.

604, 617 (9th Cir. 2017) (citation omitted). But regardless of nomenclature, "due process under the Recognition Act is concerned only with *procedural* due process, not *substantive* due process." *Tropp*, 2008 WL 5758763, at *15 (citing *Ashenden*, 233 F.3d at 480).

The same standard applies to the proceeding-specific due process ground. Restatement (Fourth) of Foreign Relations Law § 484 cmt. J; *accord* 2005 Uniform Act § 4 cmt. 12. The two provisions use identical language: "compatible with the requirements of due process of law." CPLR § 5304(a)(1), (b)(8). And "one ordinarily assumes that identical words used in different parts of the same act are intended to have the same meaning." *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 319-20 (2014) (cleaned up); *see Midbrook*, 874 F.3d at 615. Both the Seventh and Ninth Circuits, interpreting other States' recognition statutes modeled on the Uniform Act, have confirmed this self-evident conclusion: proceeding-specific due process requires only international due process. *Ashenden*, 233 F.3d at 478 (proceeding-specific standard concerned only with "conformity to the international concept of due process"); *Midbrook*, 874 F.3d at 617 (proceeding-specific standard concerned only with "fundamental fairness").

49

2.     A separate ground in the Recognition Act permits courts to deny recognition if "the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering courts with respect to the judgment."  CPLR § 5304(b)(7).  This provision is virtually identical to Section 4(c)(7) of the 2005 Uniform Act.  To satisfy this exception, the party resisting recognition must make "a showing of corruption in the particular case that had an impact on the judgment rendered."  Restatement (Fourth) of Foreign Relations Law § 484 cmt. I (quoting 2005 Uniform Act § 4, cmt. 11).  As an illustration, the Restatement notes that "bribery of the judge" may justify nonrecognition if it "had a sufficient impact" on the judgment.  *Id.*

## B.     Verizon Failed to Satisfy the Due Process and Integrity Grounds

Verizon never grapples with the fact that whether to deny recognition based on the due process and integrity grounds is entrusted to the district court's discretion.  And Verizon comes nowhere close to showing an abuse of discretion.

### 1.     *Verizon cannot show it was denied due process*

Verizon cannot show that the district court abused its discretion in rejecting Verizon's due process argument.  Verizon received procedural due process in Costa Rica.  Verizon received notice, the right to be heard and present

50

evidence, access to information and records, the right to be represented by counsel, a reasoned decision, and a right to appeal. JA2089-93. Verizon's own expert conceded that "every formal element of the Costa Rican Constitutional Court's test for procedural due process was satisfied in this case." JA2095-96. And, as the State Department has long recognized, these are rights that Costa Rica's "independent judiciary vigorously enforces." *Canales Martinez v. Dow Chem. Co.*, 219 F. Supp. 2d 719, 734 (E.D. La. 2002) (quoting U.S. Dep't of State, Country Report on Human Rights Practices, Costa Rica, 2001 (released Mar. 4, 2002)). Certainly, Verizon does not contend that Costa Rica's judicial *system* fails to provide due process. Nor could it. "Costa Rica has one of the more independent, advanced judicial systems in Latin America." *Id.* at 735.

Verizon vaguely protests (at 41) that due process must mean more than just notice and the opportunity to be heard. New York courts disagree. *See CIBC Mellon*, 100 N.Y.2d at 222; *Standard Chartered Bank*, 973 N.Y.S.2d at 198. Verizon cites no case embracing its view.[12] In any event, Verizon does

---

[12] Unable to cite a single case embracing its view, Verizon claims its novel construction is required because otherwise proceeding-specific due process would be redundant with (b)(1) and (b)(2), which permit nonrecognition when the defendant in the foreign proceeding "did not receive notice of the proceeding in sufficient time to enable the defendant to defend" or the "judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case." CPLR § 5304(b)(1), (2). Verizon is wrong. These grounds

51

not identify the procedures it claims were required that were ostensibly denied.  Having received notice; the right to be heard and present evidence; access to information and records; the right to be represented by counsel; reasoned decisions; and the right to appeal, Verizon received far more than the limited due process contemplated by New York's Recognition Act.

Attempting to manufacture legal error, Verizon asserts (at 40) that the district court "misapprehended the nature" of the due process and integrity inquiries and thus failed to consider the "particular circumstances" in these specific proceedings.  Not so.  The district court's opinion is replete with references to the proceeding-specific nature of the inquiries.  *See, e.g.*, SA6-7 & n.1, 15-16 & n.3, 18, 20-21, 28-29.  And the court expressly framed its conclusions in those terms.  *See, e.g.*, SA18 ("Verizon was provided with procedural due process"); *id.* (Verizon failed to create a question "as to whether procedural due process was afforded here"); SA20-22 (rejecting due process arguments based on proceeding-specific details); SA28-29 (same for integrity arguments).  Verizon's attempt to concoct legal error falls flat.

_____

are not coterminous with notice and the opportunity to be heard.  If a defendant is denied an opportunity to be heard for reasons other than fraud or lack of notice, she would have a nonrecognition argument under the proceeding-specific due process ground but not under (b)(1) or (b)(2).

Finally on this point, Verizon argues (at 41) that the Recognition Act's conception of due process includes a broad substantive dimension. Verizon does not explain what "substantive" means in this context, other than a substantive result that it dislikes. But, as previously noted, "due process under the Recognition Act is concerned only with *procedural* due process, not *substantive* due process." *Tropp*, 2008 WL 5758763, at *15 (citing *Ashenden*, 233 F.3d at 480). If Verizon wants to argue about the "substance" of the result in Costa Rica, it must convince the Court that the judgment is "repugnant to the public policy" of New York or the United States. *Id.* at *17.[13]

In all events, exercising its discretion, the district court correctly held that Verizon's arguments would fail even if Recognition Act's due process included a substantive dimension. SA15-16 n.3. In its due process argument on appeal, after regurgitating (at 38) its complaints about the Costa Rican courts'

---

[13] Verizon cites no authority holding that the due process ground authorizes courts to conduct freewheeling inquiries into "the correct interpretation" of substantive foreign law. *Contra* Verizon Br. 42. *Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156 (E.D.N.Y. 2003), is not to the contrary. *Berov* was a copyright case involving the ownership rights to copyrights in films created by a state-owned film studio in the Soviet Union. *Id.* at 158. It did not involve the Recognition Act.

jurisdictional and arbitration rulings already discussed, Verizon advances two "substantive" due process arguments. Each lacks merit.

Verizon first contends (at 39) that Costa Rica's economic interest group doctrine "itself violates due process." That's nonsense. As the district court noted, Verizon's expert conceded that Costa Rican courts have applied the economic interest group theory in thousands of published decisions. SA16; JA2066-67. Neither of the cases Verizon cites even hint that veil piercing or the like would violate *American* due process—much less *international* due process. Verizon Br. 39 (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999)). *Smith/Enron* itself acknowledges that nonparties can sometimes be bound by contracts under theories of "veil piercing/alter ego." 198 F.3d at 97. Beyond that, *Smith/Enron* did not hold that parties can never "be held to the burdens of contract while being denied its benefits," as Verizon claims (at 39). Rather, it declined to do so on the specific record before the court. 198 F.3d at 97. And, in all events, that case did not suggest that a different approach to veil piercing in another country would violate international due process. *See* SA16 ("New York courts do not

reexamine judgments imposed by foreign courts merely because they may differ from how a New York court may rule." (collecting cases)).

Next, Verizon (at 39-40) argues, unsupported by any authority, that the damages award is "the antithesis of due process." The district court correctly rejected that argument. As the court noted, at trial, Trejos Hermanos proved damages with its own expert evidence, an analysis that the court-appointed expert confirmed. SA22; JA776-84. The damages award accounts for the fact that Verizon Costa Rica's willful breach of the MPA left Trejos Hermanos insolvent. JA776-84. And, as the district court noted, Verizon had the opportunity to present evidence and examine the damages experts at trial in Costa Rica but "chose not to." SA22. Second-guessing the Costa Rican courts' determination would be particularly improper given that tactical decision by Verizon. JA2108-09, 789.

### 2. *Verizon cannot show corruption*

The district court likewise did not abuse its discretion in rejecting Verizon's scattershot integrity arguments. Absent from Verizon's brief is any reference to the standard for the "integrity" nonrecognition ground. It has not come close to making the required "showing of corruption." Restatement (Fourth) of Foreign Relations Law § 484 cmt. I & n.8 (quoting 2005 Uniform

55

Act § 4, cmt. 11). In its place, Verizon peddles innuendo. As Verizon tells it, the Costa Rican courts could only have rejected its jurisdiction and arbitration arguments, and could only have rendered the at-issue damages award, due to corruption. But being a disappointed litigant is no basis on which to attack a foreign judgment. *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 631 (2d Cir. 1976). Notably, at his deposition, Verizon's expert disavowed any argument that the parties or the Costa Rican courts engaged in fraud. JA2056.

Nonetheless, Verizon (at 36-37) maintains that corruption was lurking because Trejos Hermanos is owned by a family that includes former politicians, and was represented by an attorney who had mentored one (of the five) judges on the Supreme Court of Justice and another without litigation experience who was related to a *former* judge. If that is enough to raise substantial doubts about the integrity of the proceedings, one must wonder what Verizon thinks of proceedings in this Nation's courts, which regularly involve political families; where judges not infrequently decide cases argued by their former clerks; and where neither siblings nor children of former judges are barred from arguing in front of those judges' former courts. *See, e.g.*, *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997) ("It is common knowledge in the

profession that former law clerks practice regularly before judges for whom they once clerked.").

Rejecting Verizon's arguments, the district court noted that Verizon's own expert confirmed that the "judges on the Supreme Court of Justice are competent and well-respected." SA28 (citing JA2079-83). As below, *see* SA28-29, Verizon continues to impugn the Costa Rican proceedings based on nothing but rank speculation.

Verizon (at 37) now asserts for the first time that an "independent" Costa Rican judge initially agreed that the Supreme Court panel needed to recuse and that the ruling then was reversed without any explanation. To support this accusation, Verizon cites a declaration from its counsel in the Costa Rican proceedings. But that declaration does *not* state that the initial recusal decision was "reversed without any explanation." Verizon Br. 37 (citing JA2411-12). Nor could it. After reinstating the original panel, the Supreme Court of Justice's independent investigating magistrate provided 14 pages of cogent explanation for why Verizon's recusal request failed on the merits, which Trejos Hermanos would gladly provide to this Court upon request. Verizon did not make this argument below, so there was no reason for Trejos Hermanos to put the relevant orders in the record.

In any event, Verizon forfeited this final argument by failing to raise it below.  *Huron*, 817 F.3d at 437.

## III. The District Court Did Not Abuse Its Discretion in Partially Denying Verizon's Rule 56(d) Motion

As set forth above, Verizon has not established that the district court abused its discretion by recognizing the judgment.  In a last-ditch attempt at reversal, Verizon (at 43-49) claims the district court abused its discretion by not giving Verizon all of the discovery it sought under Rule 56(d).

Rule 56(d) vests district courts with discretion to "defer" consideration of a motion for summary judgment or "allow time . . . to take discovery."  To request such relief, a nonmoving party must identify by "affidavit or declaration" the specific information it seeks, *id.*, and explain with "specificity how the facts sought are reasonably expected to create a genuine issue of material fact," *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (citation omitted).  "[S]peculative" or "generalized assertions" do not suffice.  *Id.* at 151-52 (citation omitted).

Verizon failed to satisfy its burden.  As the district court observed, "[f]or the most part," Verizon did not identify "specific facts" that were "material" to its "Article 5304 defenses," which turned on "legal" questions that are "regularly decided without discovery."  JA572.  And Verizon relied on mere

58

"speculation" and "conclusory statements" to justify the fact discovery that it did specify. JA573; *see Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) ("A court can reject a request for discovery . . . if it deems the request to be based on speculation as to what potentially could be discovered.").

Verizon resists this conclusion, arguing that it is "rare[]" to grant summary judgment without "afford[ing] an opportunity to conduct discovery" and that this Court has "often reversed" when a district court does so. Verizon Br. 44 (collecting cases). But this is no ordinary civil dispute; it is a judgment recognition action. The parties conducted discovery in the underlying civil dispute in Costa Rica. *See* JA719. Accordingly, New York law provides for expedited treatment of actions "based upon . . . any judgment" by allowing judgment creditors to seek recognition through "a motion for summary judgment in lieu of complaint." CPLR §§ 3213 & 5303(b). Recognition actions like this one are given "preferential treatment" and are often "decided in an expedited manner upon the papers submitted." Mark. C. Dillon, *Practice Commentaries to Section 3213 (The "Motion-Action," Generally)* (2021); *see, e.g.*, *Deslauriers & Co., Att'ys S.A. v. Joel*, 117 N.Y.S.3d 812 (N.Y. Civ. Ct. 2019); *Shipcraft v. Arms Corp. of the Phil., Inc.*, 2013 WL 649415 (N.Y. Sup. Ct. Feb. 19, 2013).

In any event, as Verizon (at 16, 48 n.3) acknowledges, the district court *granted* Verizon's request for expert discovery. *See* JA570-71, 2366-67.

Verizon made an "insufficient" showing under Rule 56(d) as to the three requested categories of fact discovery. JA571. First, Verizon (at 47) faults the district court for not allowing it to "confirm[]" its suspicion that ICE was "fraudulently" joined to the lawsuit "as a pretext for jurisdiction." But the "specific discovery" Verizon sought was "calculated emails or discussions without counsel" establishing a scheme to name ICE in Trejos' complaint "so that things could proceed in the administrative court." JA2373; *see* JA535. Because Verizon could not identify any "basis" for believing that such documents existed, JA2373-74, the district court exercised its discretion to deny Verizon's "speculative" request, JA572; *see, e.g.*, *Alphonse Hotel*, 828 F.3d at 151-52 (rejecting Rule 56(d) challenge brought by party who "failed . . . to explain" its "basis" for believing the requested documents existed). And, even if such documents existed, they could not have "create[d] a genuine issue of material fact," *Paddington Partners*, 34 F.3d at 1138, as Verizon never asserted Costa

60

Rican law embraces the concept of "fraudulent joinder" when assessing sub-ject-matter jurisdiction,[14] *see* JA535, 542, 2373-74.

Next, Verizon (at 46) claims the district court abused its discretion by not allowing Verizon to seek discovery regarding the "execution" of the "arbi-tration provision in the [MPA]" and Trejos Hermanos' "understanding" of it. But Verizon's Rule 56(d) declaration "failed to explain with any specificity 'how the facts sought [we]re reasonably expected to create a genuine issue of mate-rial fact.'" *Alphonse Hotel*, 828 F.3d at 151 (quoting *Paddington Partners*, 34 F.3d at 1138). Instead, the declaration simply insisted that Verizon "reasona-bly believe[d]" this "discovery w[ould] lead to triable issues of fact." JA540. That sort of "bare, generalized assertion[] cannot justify delaying the resolu-tion of a summary judgment motion." *Alphonse Hotel*, 828 F.3d at 151-52.

Finally, Verizon (at 45-46) contends that it should have been allowed to seek any "[s]ecret" "ex parte communications" between Trejos Hermanos and "members of the Costa Rican judiciary." But, as the district court recognized,

---

[14] In the United States, fraudulent joinder "is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (citation omitted). It is "meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (citation omitted).

Verizon provided "no specific non-speculative reason to think that discovery will provide such evidence." JA573. Verizon merely invoked the "totality of circumstances" to justify its request to "ferret out" whether the Costa Rican judiciary "was engaged in monkey business." JA541, 573, 2399. This smear of "one of the more independent" and "advanced judicial systems in Latin America" is both offensive and baseless. SA28 (citation omitted). The district court did not abuse its discretion by denying Verizon a "fishing expedition" to support this "farfetched" conspiracy theory. *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir. 1991).

Verizon (at 48) also suggests that its requested discovery into its conspiracy theory was justified because a "different Costa Rican judge" issued a recusal order that was "quickly and mysteriously overturned, suggesting some sort of backdoor communication" with "the Costa Rican judges hearing this case." As discussed, *supra* pp. 56-58, Verizon's breathless speculation is unsupported. In any event, Verizon did not cite this recusal order as a basis for its discovery requests below, *see* JA528-43, and thus has forfeited the argument, *Huron*, 817 F.3d at 437.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment below.

Respectfully submitted,

/s/ *Amy Mason Saharia*

JONATHAN M. LANDY
AMY MASON SAHARIA
   *Counsel of Record*
BENJAMIN W. GRAHAM
NOAH C. MCCULLOUGH*
JONATHAN E. SPRATLEY
WILLIAMS & CONNOLLY LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *(202) 434-5000*
   *asaharia@wc.com*

DATE: AUGUST 8, 2024

* Admitted in the District of Columbia under an emergency examination waiver and practicing law under the supervision of D.C. Bar members pursuant to D.C. Court of Appeals Rule 46-A.

63

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Amy M. Saharia, counsel for appellee and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4), that the attached Brief of Appellee is proportionately spaced, has a typeface of 14 points or more, and contains 13,007 words.

DATE: AUGUST 8, 2024                    /s/ *Amy Mason Saharia*

                                        AMY M. SAHARIA

## CERTIFICATE OF SERVICE

I, Amy M. Saharia, counsel for appellee and a member of the Bar of this Court, certify that, on August 8, 2024, a copy of the attached Brief of Appellee was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

DATE: AUGUST 8, 2024

/s/ *Amy Mason Saharia*

AMY M. SAHARIA